JOHN M. PECK, RESPONDENT, v. THE NEW YORK CEN-
TRAL AND HUDSON RIVER RAILROAD COMPANY,
APPELLANT.

*Employmant of brakeman — scope of — Excessive damages — verdict of jury — when
not set aside.*

A brakeman, put in charge of railway cars with a view to securing the proper
and orderly seating of passengers, forcibly ejected the plaintiff, who disobeyed
his direction. *Held,* that in so doing the brakeman must be deemed to have
acted within the scope of his employment, and that the company was liable in
case he used excessive and unnecesssary force.

Upon the former trial plaintiff recovered a verdict for $5,000, which was set aside
by the General Term, on the ground that the damages awarded were
excessive. Upon the second trial a verdict was recovered of $4,000. *Held,* that
this second verdict, rendered upon substantially the same facts as were pre-
sented to the first jury, must be accepted as final and conclusive.*

MOTION for a new trial upon exceptions ordered to be heard in
the first instance at the General Term, after a verdict in favor of
the plaintiff, and appeal from an order denying a motion for a new
trial, made upon the minutes of the justice before whom the action
was tried.

The action was brought to recover damages alleged to have been
sustained by the plaintiff, in consequence of his having been forci-
bly removed from one of defendant's cars. Upon the first trial
the plaintiff had a verdict for $5,000. Upon appeal to the Gen-
eral Term, the verdict was set aside, on the ground that the dam-
ages awarded were excessive, the case being reported in 11 N. Y.
S. C. R. (4 Hun), 236. Upon the second trial the jury ren-
dered a verdict in his favor for $4,000. A motion to set aside this
verdict having been denied, this appeal was taken.

*Samuel Hand, Matthew Hale* and *Frank Loomis,* for the
appellant.

*Amasa J. Parker,* for the respondent.

BOOKES, J. :

The case is the same now as when it was before the court on the
former appeal, as regards the question of defendant's liability for

* See *Lunt* v. *L. & N. W. Railway Co.* L. R. (12 B.), 281.

the act of the brakeman, Cochran. (11 N. Y. S. C. [4 Hun], 236.)
The brakeman was stationed at the car to direct passengers who
might attempt or desire to enter. The plaintiff disobeyed his
direction, whereupon the former forcibly ejected him. There was
no evidence that the brakeman had been especially instructed to
remove any one from the cars by force, but he was placed in charge
to direct passengers with a view to their orderly and proper arrange-
ment therein. Under such a state of facts it was held that the
brakeman must be deemed to have been acting within the scope of
his employment, and that the company was liable in case he used
excessive and unnecessary force in removing the plaintiff from the
cars. There has been some loose writing on the question as to the
liability of the master for the wrongful act of his servant, but the
cases seem to hold quite uniformly that the master is liable for the
wrongful act of his servant, if done in his service and within the
scope of his employment, and this, although in doing the act the
servant depart from the instructions of the master. (*Higgins* v.
*Watervliet Turnpike and R. R. Co.*, 46 N. Y., 23.) In this case,
ANDREWS, J., says: "If he (the master) employs incompetent or
untrustworthy agents it is his fault, and whether the injury to third
persons is caused by the negligence or positive misfeasance of the
agent, the maxim *respondeat superior* applies, provided only, that
the agent was acting at the time for the principal, and within the
scope of the business intrusted to him." In *Cosgrove* v. *Ogden*
(49 N. Y., 255–257) Judge GROVER says: "The test of the master's
responsibility for the act of his servant is not whether such act was
done according to the instructions of the master to the servant, but
whether it is done in the prosecution of the business that the ser-
vant was employed by the master to do." It has also been said in
some cases, that when the principal puts the agent in place of him-
self, he is liable for the wrongful acts committed by the agent in the
course of the employment, or the carrying out of the business with
which he is intrusted. So in the recent case of *Rounds* v. *The
Del., Lac. and W. R. R. Co.*, in the Court of Appeals (2 N.
Y. W. Digest, 260), it was held that when authority is con-
ferred on a servant by a master to act for him, it carries with
it, by implication, authority to do all things necessary to its execu-
tion, and the master is liable for his tortious acts, although

he depart from the private instructions of the master, provided
he was engaged at the time in doing his master's business, and
was acting within the general scope of his employment. The case
of *Bayley* v. *Man., Sheff. and Lincolnshire R. Co.* (L. R., 7 Com.
Pl., 415; 4 Eng. Rep. [Moak's notes], 384), seems much like the
one in hand. In this case a railway porter, having been intrusted
with a general authority for certain purposes, in connection with
the management of the carriages of his employers in the station
where he was employed, the company was held liable for his
wrongful act in removing a passenger from a carriage which he
erroneously thought was the wrong carriage. Now, in the case at
bar, the brakeman was put in charge of the cars with a view to
secure the proper and orderly seating of passengers. In carrying
out this purpose he committed the act complained of. He was
acting, therefore, within the scope of his employment. The case
was tried upon the theory, and doubtless correctly in that regard,
that he might suppress disorder and secure order among the passen-
gers who should enter or desire to enter the cars. As a servant of
the company he would have been protected in using all necessary
force to secure that end ; and it must follow, therefore, within the
doctrine of the cases cited, that the company would be liable for
his wrongful acts in carrying such purpose into effect.

There was no error in the refusal of the learned judge to nonsuit
as requested. Nor was there any error in the admission or rejec-
tion of evidence; nor in the charge of the judge or in his refusal
to charge as requested. But a serious difficulty arises on the point
that the amount of damages awarded by the jury is excessive. It
was on this ground that a new trial was granted on the former
appeal. The former verdict was $5,000. This sum was deemed
quite extravagant and palpably unjust, in view of the case made
on the evidence. The verdict on the retrial was for $4,000. The
case is quite similar on the proof to that before considered by the
court, and the reduction in the sum now awarded by the jury
seems much less than it should have been, in view of the remarks
then made by the court. (4 Hun, 238, 239.) But even supposing
the amount now awarded is deemed by the court large, is it within
the province and duty of the court to grant another new trial on
this ground? A second jury has considered the case under admo-

nition from the court, and has made some deduction from the sum before awarded. The subject of damages is for the jury, and must be at all times in their discretion and judgment. The court can only interfere on this point when it is apparent that the jury were improperly influenced, or must have acted from passion, partiality or corruption. The authority to grant new trials on the ground of excessive damages is undoubted, but its exercise by the courts has been about equally capricious as has been the verdicts of juries. Little aid can be obtained on this subject by referring to cases, as will be seen on turning to the opinion of Mr. Justice HOGEBOOM, in *Murray* v. *Hud. R. R. R. Co.* (47 Barb., 196). The verdict there was for $8,000, and a new trial was granted unless the plaintiff would reduce it to $6,000. This disposition of the case was directly against the decision in *Cassin* v. *Delany* (38 N. Y., 178), where it was held that the General Term had no power to order the reduction of the verdict to a sum named, as the alternative of a new trial. However, the decision in *Murray's Case* was after this, in 1871, affirmed in the Court of Appeals. (48 N. Y., 655, *n.*) The affirmance in *Murray's Case* must be deemed to overrule the previous decision in *Cassin* v. *Delany*. It must be admitted, I think, that the verdict of $4,000 in this case is large, in view of the injury here proved; but this sum having been awarded by a second jury, the case having been sent back for reconsideration on that point, and nothing appearing except the amount, on which to predicate partiality, corruption or improper influence, I think the court must accept it as final and conclusive.

The order appealed from must be affirmed, and the motion for a new trial on the case and exceptions must be denied, and the plaintiff is entitled to judgment on the verdict, with costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Order affirmed, with costs.